**GULF & SOUTHERN TRANSPORTA- TION COMPANY, Inc., et al., Appellants,**

v.

**Austin JORDAN, An Individual, d/b/a Jordan Truck Line, Appellee.**

**GULF & SOUTHERN TRANSPORTA- TION COMPANY, Inc., Appellant,**

v.

**FIRESTONE TIRE AND RUBBER COM- PANY et al., Appellees.**

**Nos. 17034, 17080.**

United States Court of Appeals Fifth Circuit.

June 30, 1958.

Rehearing Denied in No. 17034 Aug. 23, 1958.

John S. Tucker, Jr., R. Macey Taylor, Tucker & Taylor, Birmingham, Ala., for appellants.

Wm. Inge Hill, Fred S. Ball, Jr., Maurice F. Bishop, Hill, Hill, Stovall & Carter, Montgomery, Ala., for appellees.

Before RIVES, CAMERON and BROWN, Circuit Judges.

RIVES, Circuit Judge.

A contract was executed February 24, 1956, by which appellee Jordan agreed to sell and transfer and appellant Gulf & Southern agreed to purchase Jordan's motor transportation authority between

Montgomery, Alabama and Greenville, Alabama, evidenced by Certificate No. 484 of the Alabama Public Service Commission, and all assets and good will connected therewith. The contract was made subject to approval by the APSC and was retroactive to "12 o'clock midnight, January 19, 1956, for purposes of prorations and other accounting problems." Gulf & Southern paid Jordan $25,000 as a cash down payment which was to be returned if not approved by the APSC. Subject to such approval, the business was to be conducted for the account of Gulf & Southern from the effective date of the contract, January 19, 1956; until such approval, however, Jordan was to remain in active charge and management of the business at a monthly salary of $700.

On April 19, 1956, the APSC approved the transfer of the operating authority, and on May 8, 1956, pursuant to the original contract, a conditional sales agreement pre-dated to January 20, 1956, was executed by the parties. The physical properties and the operation and supervision of the line were then turned over to Gulf & Southern. Jordan's authority to sign checks and his salary and services were terminated.

As a carrier operating solely within the State of Alabama, Jordan had been exempt, under the provisions of section 206 (a) of Part II of the Interstate Commerce Act, 49 U.S.C.A. § 306(a), from having to obtain from the Interstate Commerce Commission a certificate authorizing the transportation of property in interstate commerce. Gulf & Southern's operations were not so confined, and within about a week after May 8, 1956, a representative of the ICC advised Gulf & Southern that it was not permitted to handle interstate movement of commodities over the route without obtaining a certificate of public convenience and necessity from ICC.

In order to have time to apply for and obtain a certificate from ICC, Gulf & Southern sought and obtained Jordan's co-operation, and the effective date of approval of the transfer by APSC was extended to August 19, 1956. Since he would remain responsible for the operations, Jordan, before consenting that the effective date of the order be so extended, required Gulf & Southern and its individual stockholders to enter into a written agreement to indemnify him and hold him harmless from any liability by reason of the operation of the line in his name from January 19, 1956, until the transfer should finally be consummated. The indemnity agreement was executed May 25, 1956. Included in its terms was an agreement by Gulf & Southern and its stockholders that all "C.O.D.'s" and accounts payable should be kept in current condition and that, if any were allowed to be delinquent for more than thirty days from the *"date of the accrual thereof,"* Jordan would have the option to foreclose.

By June 28, 1956, Jordan had received many calls and demands from creditors whose bills were not paid and had, in turn, discussed them with the Secretary and Montgomery Manager of Gulf & Southern. By letter dated June 28, 1956, Jordan demanded the re-delivery to him of all of the properties and rights. The properties were re-delivered to Jordan, and under date of August 15, 1956, Jordan and Gulf & Southern joined in an application to APSC to vacate its order of transfer of Certificate No. 484 and "to revest the title to said Certificate No. 484 and the authority therein contained" in Jordan, all, however, "without prejudice to either party as against the other in respect to claims growing or arising out of the proposed transfer and sale of said operating authority or in respect to the operations and dealings between the parties arising therefrom."

This litigation ensued. Upon pre-trial, the district court, with the consent of the parties, appointed an accountant to audit the books and records of Jordan Truck Line for the period "from 12:00 P.M. midnight January 19, 1956 to 12:00 P.M. midnight June 27, 1956." The final accounting reflected a balance of $25,383.95 due by Gulf & Southern to Jordan, to which the court added $3,500 as a reasonable attorney's fee provided in the indemnity agreement and entered judgment

against Gulf & Southern and its stockholders for $28,883.95. That judgment was entered after a week-long trial and pursuant to full findings of fact and conclusions of law.

■ The foregoing are the facts in the case docketed in this Court as No. 17034. The facts in No. 17080 are the same, except that that appeal is from a separate judgment in favor of Jordan against Gulf & Southern for $5,925.27 on account of monies paid by Jordan in satisfaction of a judgment obtained by Firestone Tire and Rubber Company growing out of certain C.O.D. shipments made over the line during the pertinent period, of which shipments Firestone was the consignor.

The appellant questions the findings of fact by the district court and particularly insists in substance that Jordan by his conduct and actions, effectively prevented Gulf & Southern from performing its contract, thereby giving it the right to rescind the contract. No discussion is required to demonstrate that the district court's findings of fact are not clearly erroneous. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A.

The appellant further insists: "The District Court erred in not finding as a fact that the original contract of sale impliedly contained therein procurement of Interstate Authority corresponding to that of the Intrastate Authority."

The original contract was expressly made "subject to the approval of the Alabama Public Service Commission." Nothing was said about the Interstate Commerce Commission. In the absence of fraud or unusual circumstances, the rule of construction, *expressio unius est exclusio alterius*, is applicable. The evidence does not show that Jordan misled Gulf & Southern in any way. To the contrary, Gulf & Southern was already serving as an interstate carrier, and several of its officers and stockholders were thoroughly familiar with the requirements of the Interstate Commerce Commission, which were, nevertheless, unaccountably overlooked in its dealings with Jordan.

The only other claimed material error of law goes to the district court's use of the words "accrual" and "accrued", as thus expressed in its conclusions of law:

"3. That the words 'accrual' and 'accrued' as used in the indemnity agreement are construed to mean the dates on which the liabilities became fixed by the delivery of commodities or the sale of services, as the case may be, as distinguished from the maturity or due date thereof."

It is not necessary to review the meaning of "accrual" and "accrued" because those words were important only in determining Jordan's right to foreclose, and, as has been seen, the properties and certificate were re-delivered to Jordan pursuant to stipulation and agreement of the parties. Under the circumstances, the reservation of rights, which has been quoted, was clearly not broad enough to encompass any claim of unlawful foreclosure.

■ The judgment appealed from in No. 17080 covers a claim also included in No. 17034, so that any payment on No. 17080, except as to costs, will operate to reduce the amount of No. 17034. 49 C. J.S. Judgments § 575.

With some justification, the appellee complains that it has been prejudiced by this Court's indulgence of the appellants in delays contravening Rule 75(a), Federal Rules of Civil Procedure, and Rule 16 of this Circuit, 28 U.S.C.A.; in that, notwithstanding appellants' failure to supersede either judgment, appellee has not been able to make collection or to register the judgments on other districts pursuant to 28 U.S.C.A. § 1963.[1] To avoid still further delay, the Clerk is directed forthwith to issue a copy of the judgment of affirmance as and for the mandate of this Court. The judgments appealed from are

Affirmed.

1. See Abegglen v. Burnham, D.C.Utah 1950, 94 F.Supp. 484.